EVELYN M. ERBE *vs.* A. D. JUILLIARD & CO., INC.

AUGUST 5, 1953.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

38

FLYNN, C. J. This employee's original petition for workmen's compensation was heard in the superior court on the employer's appeal from a decision of the director of labor under general laws 1938, chapter 300. Thereupon a decree was entered awarding certain compensation for total incapacity and the respondent employer claimed an appeal therefrom. However, before the time fixed for the filing of the transcript and reasons of appeal respondent filed a motion for a rehearing of the cause on the ground of newly discovered evidence. The motion was heard and denied by the trial justice and without objection such ruling was incorporated in the claim and reasons of appeal which are now before this court.

The petitioner Evelyn M. Erbe had worked eight years for respondent, lately as a comb winder. In the course of her employment on January 10, 1951, while bending over to reach into the bottom of a hand truck for a bobbin and trying to straighten up, she suffered a sharp pain in the lower part of her back. According to her testimony, she reported her injury that day to the nurse in respondent's first-aid department and two days later went to Dr. William J. O'Connell for treatment.

After attempting to work during the first three days of the following week she again visited Dr. O'Connell, who treated her further for her back injury. He referred peti-

tioner to Dr. G. Edward Crane, an orthopedic specialist, who examined her on January 29 and February 5, 1951 and found a pre-existing spinal deformity but no objective evidences of injury to the lower back. He concluded from such examinations that she could return to her regular work. Later at the request of respondent's insurer she was examined February 8, 1951 by Dr. Herbert E. Harris, another specialist, whose findings and recommendation substantially corroborated those of Dr. Crane.

She then stopped going to Dr. O'Connell and returned to her family physician, Dr. James B. Moran, who treated her from February 24, 1951 for a considerable period of time. He testified that she had symptoms of a particularly weak back and that in overreaching she had precipitated the symptoms complained of, although he admitted that his conclusions in some respect were based largely on her subjective complaints.

When her back had not improved she went to the Lahey Clinic in Boston, Massachusetts, in July 1951 for a complete examination extending over four days, the cost of which she paid herself. As a result no finding of physical injury to the back or cause thereof appears but she was advised to lose weight and take exercises for her back, which she did from October 1951 at Saint Joseph's Hospital. Finally at the suggestion of Dr. Moran she was examined on April 2, 1952 by Dr. William V. Hindle, another specialist. He was unable to find an adequate cause for her injured back but advised a myelogram test as a last resort merely to rule out the presence of a ruptured intervertebral disc, although he expressed doubt that she had one. He was unable to explain what caused the pain in her injured back, but from her complaints he felt she was unable to work.

During all this time petitioner claims to have been wholly incapacitated, excepting for a period between May 7 and September 21, 1951, when she worked at the Calart Artificial Flower Company. The evidence for her is based largely on her own statements of subjective symptoms.

None of the specialists found any definite physical cause for her pain and incapacity and two of them felt she was able to work whereas the other specialist concluded that she was unable to resume her regular employment. Doctor O'Connell, the first physician who examined her shortly after the accident, was not called to testify, and Dr. Moran, who was not a specialist, testified without detailed records.

The trial justice found substantially that petitioner, who was only four feet eleven inches tall, evidently had a defective spine prior to and not caused by the accident; that this deformity, however, made her the type of person who would be subject to the kind of injury she complained of; and that as she had to reach further and further into the truck to lift bobbins therefrom she overstretched her weak back and suffered the injury complained of on January 10, 1951. He expressly recognized that there was an issue between her subjective complaints on the one hand and the objective physical findings of several doctors on the other. However, he concluded that petitioner spent her own money in an attempt to correct the cause of her incapacity which would be unlikely if she was not suffering from an injury; that the doctors could not see inside her back so as to categorically contradict her complaint of injury and pain; and that as to the injury she was qualifiedly corroborated by another employee and to some extent also by the nurse.

The respondent contends, first, that the trial justice was clearly wrong because there was no legal evidence to support his finding that petitioner was disabled by reason of an injury arising out of and in the course of her employment; secondly, that there was no legal evidence to support the finding that the petitioner was disabled after May 7, 1951 by reason of the alleged injury; and finally, that the trial justice erred in denying its motion for a new hearing on the ground of newly discovered evidence.

The respondent, in arguing that there was no evidence to support a finding of injury and incapacity for work as contemplated by the statute, reviews the evidence in detail,

points out some possible discrepancies in plaintiff's testimony and other apparent conflicts with the evidence of objective findings by certain of the doctors and with the nurse's records. These are marshaled to show that virtually there was overwhelming evidence against a conclusion that the petitioner received a back injury on January 10, 1951 or at any time.

In our view, however, this contention is essentially addressed to the credibility of the witnesses and the weight of the testimony. Even respondent admits in its brief that there is certain "unsupported testimony" of the petitioner herself. On appeal under the act such testimony cannot be disregarded if it is probative and is believed by the trial justice. From our view of the transcript we find the evidence to be conflicting, and under the act the credibility of the witnesses and the weight or preponderance of the evidence are peculiarly within the province of the trial justice. Since there is such a conflict in the evidence, his findings of fact in the absence of fraud are conclusive under the act.

The second contention is that there was no evidence to support the findings of petitioner's disability after May 7, 1951. Here again the same underlying question on conflicting evidence was presented to the trial justice. As in the case of the first contention, he showed by his decision that he was aware of the issue and excluded from his finding as to compensation the period from May 7 to September 21, 1951 when she admittedly worked at the Calart Artificial Flower Company. In our opinion apart from the weight there is some legal evidence to support this finding and therefore it is conclusive.

The third contention presents a novel question. The act admittedly does not provide procedurally for a motion for a rehearing on the ground of newly discovered evidence. The respondent, however, claims that the act in certain aspects follows the course of equity which approves rehearings on the ground of newly discovered evidence. Assuming

without deciding that the procedure was correct and that the supporting affidavits were otherwise sufficient in form, we do not agree with respondent that the trial justice arbitrarily decided the motion without giving a reason. On the contrary it appears that he entertained the motion, considered the substance of the affidavits as if they were proved facts, and yet concluded that such evidence, even if in the case, would not be so material as to alter his conclusion. In other words, he acted in substance as a trial justice sitting without a jury who was passing upon a motion for a new trial on the grounds of newly discovered evidence.

Here the alleged new evidence was in the form of affidavits of the respondent's attorney and the insurer's adjuster. In effect it is that the petitioner at the time of trial was pregnant, a child being expected to be born in September 1952; that respondent and its doctors were unaware of such condition; and that Dr. Hindle, who made the latest examination shortly before the trial and could find no objective cause for her pain and incapacity, might reasonably have been influenced in his conclusion as to causal relation if he knew that she was pregnant. No affidavit of Dr. Hindle to that effect was filed. Moreover the condition referred to relates obviously to a period beginning about December 1951 and ending September 1952. Clearly her condition at that time could not have influenced the medical examinations of all the other doctors which had taken place much earlier than December 1951.

Even assuming Dr. Hindle would have been moved thereby to testify that petitioner was not incapacitated by her back injury, such evidence would have provided merely additional conflicting testimony going to her credibility and to the weight of the evidence as a whole. In the circumstances the presence of such supposed testimony would not have required the trial justice to decide differently since there would still be a conflict; and if he adhered to his conclusion it could not be said that such decision was with-

out any evidence to support it. Whether it was material and newly discovered evidence sufficient to require a rehearing was addressed in the first instance to the sound judicial discretion of the trial justice. He had heard all the testimony and was aware of the nature of the facts alleged in the supporting affidavits. He concluded, however, that if such facts were in evidence his conclusion would not be changed. We cannot say from the record that such decision was arbitrary or an abuse of his sound discretion.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Robert Del Giudice, Alfred H. O. Boudreau,* for petitioner.

*Francis V. Reynolds, Joseph V. Cavanagh,* for respondent.